Sheri M. Thome, Esq.
Nevada Bar No. 008657
Chad C. Butterfield, Esq.
Nevada Bar No. 010532
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
300 S. Fourth Street, 11th Floor
Las Vegas, Nevada 89101
(702) 727-1400; FAX (702) 727-1401
sheri.thome@wilsonelser.com
chad.butterfield@wilsonelser.com
*Attorneys for Defendant Principal*
*Financial Group, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KEVIN and SUSAN LEWIS, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>      vs.<br><br>DELAWARE CHARTER GUARANTEE & TRUST COMPANY d/b/a PRINCIPAL TRUST COMPANY, PRINCIPAL FINANCIAL GROUP, INC., and DAVID LERNER ASSOCIATES, INC.,<br><br>             Defendants. | CASE NO:      2:13-cv-01809-GMN-GWF<br><br>**UNOPPOSED MOTION FOR LEAVE TO CORRECT DEFENDANT PRINCIPAL FINANCIAL GROUP, INC.'S MOTION TO DISMISS [DOC. 34]** |

       Defendant Principal Financial Group, Inc. ("The Principal")  respectfully requests leave to correct formatting issues in The Principal's Motion to Dismiss [Doc. 34].

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

       The Principal respectfully requests leave of Court to correct its Motion to Dismiss [Doc. 34] in order to address formatting errors that occurred during the Optical Character Recognition (OCR) conversion process.  Counsel for The Principal did not identify the formatting issues until after having already filed the Motion to Dismiss, thus necessitating this Motion.  Plaintiffs will suffer no prejudice as a result of the corrected Motion to Dismiss, as the changes are stylistic only and do not affect the substance of the Motion.  [See The Principal's Corrected Motion to Dismiss, attached hereto as Exhibit "A."]  Furthermore, Plaintiffs' counsel has represented to counsel for The Principal that Plaintiffs will not oppose The Principal's request to file a corrected Motion to Dismiss.

1

## CONCLUSION

2      Based on the foregoing, The Principal respectfully requests an Order from the Court allowing

3  The Principal to file a corrected Motion to Dismiss, a copy of which is attached hereto as Exhibit

4  "A."

5      DATED this 31st day of December, 2013.

6                          **WILSON, ELSER, MOSKOWITZ, EDELMAN**
                               **& DICKER LLP**
7

8                          BY:  /s/Sheri M. Thome
                               Sheri M. Thome, Esq.
9                               Nevada Bar No. 008657
                               Chad C. Butterfield, Esq.
10                              Nevada Bar No. 010532
                               **WILSON, ELSER, MOSKOWITZ,**
11                              **EDELMAN & DICKER LLP**
                               300 S. Fourth Street, 11th Floor
12                              Las Vegas, Nevada 89101
                               (702) 727-1400; FAX (702) 727-1401
13                              sheri.thome@wilsonelser.com
                               chad.butterfield@wilsonelser.com
14                              *Attorneys for Defendant Principal Financial*
                               *Group, Inc.*
15

16

17  GOOD CAUSE SHOWN, IT IS SO ORDERED.

18      DATED this 2nd day of January, 2014.

19

20      _____
                               United States District Judge
21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, and that on this 31st day of December, 2013, I electronically filed and served a true and correct copy of the foregoing **UNOPPOSED MOTION FOR LEAVE TO CORRECT DEFENDANT PRINCIPAL FINANCIAL GROUP, INC.'S MOTION TO DISMISS [DOC. 34]** to all parties identified on file with the CM/ECF.

T. James Truman
T. JAMES TRUMAN & ASSOCIATES
3654 N. Rancho Drive
Las Vegas, NV 89130
district@trumanlegal.com

L. Timothy Fisher
Annick M. Persinger
BURSOR & FISHER, PA
1990 N. California Blvd., Ste 940
Walnut Creek, CA 94596
ltfisher@bursor.com
apersinger@bursor.com
*Attorneys for Plaintiffs*

J. Colby Williams
CAMPBELL & WILLIAMS
700 S 7th Street
Las Vegas, NV 89101
jcw@campbellandwilliams.com

Michael D. Blanchard
BINGHAM McCUTHCHEN LLP
1 State Street
Hartford, CT 06103
michael.blanchard@bingham.com

Derek M. Care
Kenneth I. Schacter
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
derek.care@bingham.com
kenneth.schacter@bingham.com
*Attorneys for Defendant David Lerner Associates, Inc.*

By /s/Annemarie Gourley
An Employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

# EXHIBIT A

# EXHIBIT A

1   Sheri M. Thome, Esq.
    Nevada Bar No. 008657

2   Chad C. Butterfield, Esq.
    Nevada Bar No. 010532

3   **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
    300 S. Fourth Street, 11th Floor

4   Las Vegas, Nevada 89101
    (702) 727-1400; FAX (702) 727-1401

5   sheri.thome@wilsonelser.com
    chad.butterfield@wilsonelser.com

6   *Attorneys for Defendant Principal Financial Group, Inc.*

7

8             **UNITED STATES DISTRICT COURT**

                **DISTRICT OF NEVADA**

9

10   KEVIN and SUSAN LEWIS, on behalf of       CASE NO:   2:13-cv-01809-GMN-GWF
    themselves and all others similarly situated,

11

         Plaintiffs,

12

13         vs.                     **DEFENDANT PRINCIPAL FINANCIAL**
                                         **GROUP INC.'S CORRECTED MOTION**
    DELAWARE CHARTER GUARANTEE &        **TO DISMISS**

14   TRUST COMPANY d/b/a PRINCIPAL TRUST
    COMPANY, PRINCIPAL FINANCIAL GROUP,

15   INC., and DAVID LERNER ASSOCIATES, INC.,

16          Defendants.

17

18        Defendant Principal Financial Group, Inc. ("The Principal") respectfully submits this Motion

19 to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(3), the

20 corrected class action complaint (D.E. 17) ("Complaint") filed by plaintiffs, Kevin Lewis and Susan

21 Lewis ("Plaintiffs"). Plaintiffs' claims against The Principal should be dismissed for the following

22 reasons:

23        1.     This Court lacks personal jurisdiction over The Principal. Fed. R. Civ. P. 12(b)(2).

24 The Principal has *no* contacts with the State of Nevada, and exercising personal jurisdiction over it

25 would offend traditional notions of fair play and substantial justice.

26        2.     Plaintiffs lack Article III standing to assert claims against The Principal. Fed. R. Civ.

27 P. 12(b)(1). In a multi-defendant case, a putative class representative must allege that he or she has

28 satisfied all three elements of Article III standing as to *each* defendant in order to establish Article

586586.1

1  III standing as to each defendant.  Because Plaintiffs have failed to meet every element of standing

2  specifically as to The Principal, Plaintiffs lack Article III standing to bring claims against The

3  Principal.

4        3.     Venue is not proper in this Court as to The Principal.  Fed. R. Civ. P. 12(b)(3); 28

5  U.S.C. §1391.  None of the defendants are "residents" of Nevada. 28 U.S.C. §1391(b)(1).  Plaintiffs

6  fail to allege a description of events involving The Principal that occurred in Nevada.  *Id.*

7  §1391(b)(2).  And this Court lacks personal jurisdiction over The Principal. *Id.* §1391(b)(3).

8       WHEREFORE, premises considered, Defendant The Principal respectfully requests that this

9  Court grant The Principal's Motion to Dismiss Plaintiffs' Complaint.

10       DATED this 31st day of December, 2013

11

12                        **WILSON, ELSER, MOSKOWITZ, EDELMAN**
                        **& DICKER LLP**

13

14                    BY: /s/Sheri M. Thome
                        Sheri M. Thome, Esq.

15                          Nevada Bar No. 008657
                        Chad C. Butterfield, Esq.

16                          Nevada Bar No. 010532
                        300 S. Fourth Street, 11th Floor

17                          Las Vegas, Nevada 89101
                        (702) 727-1400; FAX (702) 727-1401

18                          sheri.thome@wilsonelser.com
                        chad.butterfield@wilsonelser.com

19                          *Attorneys for Defendant Principal Financial*
                        *Group, Inc.*

20

21

22

23

24

25

26

27

28

586586.1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................4

PLAINTIFFS' ALLEGATIONS ........................................................................................5

ARGUMENT ......................................................................................................................6

    I.    This Court Lacks Personal Jurisdiction over The Principal. ..................................6

        A.    Plaintiffs Cannot Establish Personal Jurisdiction. ......................................6

            1.  General Personal Jurisdiction. .............................................................7

            2.  Specific Personal Jurisdiction. .............................................................7

        B.    This Court Lacks Personal Jurisdiction over The Principal. ......................9

            1.  This Court Lacks General Personal Jurisdiction Over The Principal....9

            2.  This Court Lacks Specific Personal Jurisdiction Over The Principal .10

        C.    Plaintiffs Cannot Establish Personal Jurisdiction over The Principal based on Actions by Delaware Charter. ......................................................11

    II.    Plaintiffs Lack Article III Standing to Assert Claims Against The Principal. .......12

        A.    Article III Standing is a Threshold Issue Determined on the Facts as They Exist when the Complaint Is Filed. .................................................13

        B.    Plaintiffs Bear the Burden of Establishing Article III Standing. ..............14

        C.    There Are Three Required Elements of Article III Standing. ...................15

            1.  Plaintiffs Have Not Incurred a Distinct, Palpable Injury...................17

            2.  Plaintiffs Have Failed to Establish a Causal Connection Between their "Injury" and the Failure To Conduct an Independent Accounting....18

            3.  Plaintiffs Have Not Established Redressability................................18

    III.    Venue Is Improper in this District. ......................................................................19

CONCLUSION ................................................................................................................20

CERTIFICATE OF SERVICE .......................................................................................21

586586.1

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Principal Financial Group, Inc. ("The Principal") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss ("Motion"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(3), the corrected class action complaint (D.E. 17) ("Complaint") filed by plaintiffs, Kevin Lewis and Susan Lewis ("Plaintiffs").

### INTRODUCTION

Plaintiffs' Complaint includes as a defendant The Principal, a company with no connection to the underlying allegations other than being a holding company for another defendant, Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company ("Delaware Charter"). The Complaint contains no independent claims against The Principal. The Complaint does not present any substantive allegations or evidence Plaintiffs had a contractual relationship with The Principal. Instead, Plaintiffs lump The Principal and Delaware Charter together and collectively refer to them throughout the Complaint as "Principal." This type of over-generalized pleading conflicts with the Supreme Court's pronouncements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"), which explain that each defendant must be provided notice of what the plaintiff's claim is and the grounds upon which it rests.

The Principal is a holding company. The Principal is a Delaware corporation and maintains its corporate headquarters and principal place of business in Des Moines, Iowa. Some of The Principal's subsidiaries offer retirement savings investment and insurance products and services, including Individual Retirement Accounts ("IRA") to the public. The Principal never served as an IRA custodian or trustee to the Plaintiffs. Instead, all of Plaintiffs' purported claims are based upon governing instruments, which explicitly designated Delaware Charter as the trustee of Plaintiffs' IRAs.[1] (*See, e.g.*, Delaware Charter's motion to dismiss, Camp Decl., Ex. A, Section 2.24).

---

[1] The agreements involving Plaintiffs and Delaware Charter are referenced in the Plaintiffs' Complaint and are central to the Plaintiffs' claims. *See, e.g.*, Complaint ¶¶ 1-3, 15, 17-24, 27, 28, 31-33, 40, 45-65, 76-98. Accordingly, this Court may consider the documents without converting this Motion into one for summary judgment. *Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (recognizing court may consider documents "whose contents are alleged in a complaint and whose

586586.1

1   Plaintiffs fail to meet the threshold Article III standing requirement.  Plaintiffs have also

2   failed to establish general personal jurisdiction or specific personal jurisdiction over The Principal.

3   Likewise, Plaintiffs' claims against The Principal do not fall within any of the three venue categories

4   in 28 U.S.C. § 1391.  Accordingly, all of Plaintiffs' claims against The Principal should be dismissed

5   with prejudice.

## PLAINTIFFS' ALLEGATIONS

7   Plaintiffs bring this class action "on behalf of people who invested in certain real estate

8   investment trusts (the 'REITs') as part of their individual retirement accounts ('IRAs') with

9   Defendants Principal and DLA." [2]   "Plaintiffs and the members of the Class invested in one or more

10   Apple REITs, including but not limited to, Apple REIT 6, Apple REIT 7, Apple REIT 8, Apple

11   REIT 9, and Apple REIT 10, (hereinafter the 'Apple REITs') as part of their IRAs with Defendants

12   Principal and DLA." [3]  Plaintiffs allege "Principal" failed to comply with its contractual obligation to

13   provide them with an "accounting, valuing the assets at fair market value." [4]  Instead, "Principal" has

14   relied on "regularly issued broker-dealer statements created and mailed to Class Members" to satisfy

15   this obligation. [5]   The broker statements historically listed the value of the Apple REITS at the

16   original offering price of $11.00 per share, but in 2011 and 2012, they reported "no valuation

17   whatsoever for the Apple REITs." [6]  "Instead, the shares of these products were reported as 'Not

18   Priced' and 'Unpriced' in various sections of the statements." [7]  Based on these allegations, Plaintiffs

19   assert six claims against "Principal" – Breach of Contract (Count 1), Breach of Trust (Count 2),

---

authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."). The Trust Agreement is attached as Exhibit A to the Declaration of Kristin Camp submitted with Delaware Charter's motion to dismiss.

[2] Complaint ¶ 1.

[3] Complaint ¶ 15.  In addition to failing to provide any relevant transaction dates and impermissibly grouping Delaware Charter and The Principal together as "Principal," the Complaint gives no indication as to the specific Apple REIT(s) or other "certain real estate investment trusts" the Plaintiffs purchased through DLA.

[4] Complaint ¶ 22.

[5] Complaint ¶ 25.

[6] Complaint ¶¶ 25 (emphasis omitted), 27.

[7] Complaint ¶ 25.

586586.1

Breach of Fiduciary Duty (Count 3), Negligence (Count 6), Intentional Misrepresentation (Count 7) and Negligent Misrepresentation (Count 8).

**ARGUMENT**

**I.      This Court Lacks Personal Jurisdiction over The Principal.**

Because The Principal has *no* contacts with the State of Nevada, exercising personal jurisdiction over it would offend traditional notions of fair play and substantial justice. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) ("*College Source*"). Therefore, Plaintiffs' claims against The Principal must be dismissed for lack of personal jurisdiction.

**A.      Plaintiffs Cannot Establish Personal Jurisdiction.**

"[T]he plaintiff bears the burden of establishing" personal jurisdiction over The Principal, a non-resident. *See id.* This Court may only exercise personal jurisdiction over non-resident defendant The Principal if Plaintiffs establish: "(1) Nevada's long-arm statute confers personal jurisdiction" over the non-resident defendant; and "(2) that the exercise of jurisdiction comports with the constitutional principles of due process." *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Because "Nevada's long-arm statute permits the exercise of jurisdiction to the same extent as the Constitution," *id.* (citing Nev. Rev. Stat. § 14.065), the analysis "collapses into one: whether the exercise of personal jurisdiction comports with due process." *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1115 (D. Nev. 2013) ("*Pfister*"). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *CollegeSource*, 653 F.3d at 1073 (quoting *Int'l Shoe Co. v. State of Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) ("*Int'l Shoe*")). Those minimum contacts can be so pervasive they give rise to general personal jurisdiction or they can be few but so related to the claim they give rise to specific personal jurisdiction. However, as here, where The Principal has *no* contacts with the forum state,

neither general personal jurisdiction nor specific personal jurisdiction exists, and any attempt to exercise personal jurisdiction over The Principal is forbidden.

### 1.     General Personal Jurisdiction

The standard for general personal jurisdiction "is an exacting standard." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) ("*Schwartzenegger*").  A federal court may exert general personal jurisdiction over a nonresident defendant only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011) ("*Goodyear*").  Thus, for this Court to exercise general personal jurisdiction over The Principal, Plaintiffs must prove The Principal's business contacts are so continuous and systematic they "approximate physical presence" in Nevada.  *CollegeSource*, 653 F.3d at 1074; *Del Giorno v. W. Va. Bd. of Med.*, No. 2:12-cv-00095-KJD-VCF, 2012 WL 4753388, at * 1 (D. Nev. Oct. 4, 2012) ("*Del Giorno*") ("Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence.").

### 2.     Specific Personal Jurisdiction

Unlike general personal jurisdiction, a court may have specific personal jurisdiction over a non-resident defendant based on fewer contacts with the forum.  Though the quantity of those contacts may be fewer, the *quality* of the contacts must be greater.  *See Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) ("The first step of the specific jurisdiction analysis involves a qualitative evaluation of the defendant's contact with the forum state.").  Specific personal jurisdiction will exist over a non-resident defendant only if the contacts with the forum state are both purposeful and connected to the plaintiff's claim.

The Ninth Circuit has established a three-prong test for assessing whether a forum has specific personal jurisdiction over a non-resident defendant:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

Page 7 of 21

586586.1

(2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) ("*Pebble Beach*") (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)).

"In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the 'purposeful availment' test enunciated in *Hanson*."  *Repwest Ins. Co. v. Praetorian Ins. Co.*, 890 F. Supp. 2d 1168, 1188 (D. Ariz. 2012) ("*Repwest*"); *Schwarzenegger*, 374 F.3d at 802 ("A purposeful availment analysis is most often used in suits sounding in contract.").  Under that standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("*Hanson*"); *Pebble Beach*, 453 F.3d at 1155; *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) ("*Doe*").

The non-resident defendant's purposeful contacts must also give rise to the plaintiff's claim. "To determine whether a claim arises out of forum-related activities, courts apply a 'but for' test." *Doe*, 248 F.3d at 924. Therefore, the Court must consider "whether plaintiffs' claims would have arisen but for [the defendant's] contacts with" Nevada.  *Id.*

However, "[t]he bare existence of minimum contacts is not sufficient to allow a court to exercise personal jurisdiction over a defendant."  *Id.* at 925.  Under the third prong, the Court must consider whether "assertion of jurisdiction is reasonable."  *Id.*  "In other words, . . . the court must determine whether the assertion of personal jurisdiction would comport with traditional notions of 'fair play and substantial justice.'"  *Id.* (quoting *International Shoe*, 326 U.S. at 316).

/ / /

/ / /

/ / /

586586.1

**B.     This Court Lacks Personal Jurisdiction over The Principal.**

As Plaintiffs recognize, The Principal is "a Delaware corporation with its principal place of business in Des Moines, Iowa."[8]  Yet, Plaintiffs seek to compel The Principal to defend this litigation in a distant and unfamiliar forum.  Faced with the high burden of establishing personal jurisdiction over The Principal, Plaintiffs' sparse allegations fall short.

Plaintiffs' Complaint contains no individual allegations of personal jurisdiction over The Principal.  Plaintiffs rest their allegations of personal jurisdiction on a single, conclusory sentence, claiming "[t]his Court has personal jurisdiction over Defendants because Defendants have significant continuous and pervasive contacts with the State of Nevada."[9]  Plaintiffs' wholly unsubstantiated allegation does not even approach the requisite pleading standard under *Twombly* and *Iqbal* or the Ninth Circuit's jurisdictional precedent.  *See CollegeSource, Inc.*, 653 F.3d at 1073 ("The plaintiff cannot 'simply rest on the bare allegations of its complaint' . . . ."); *Western Showcase Homes, Inc. v. Fuqua Homes, Inc.*, No. 2:09-cv-02341-RCJ-RJJ, 2010 WL 1838364, at *4 (D. Nev. May 6, 2010) ("This is a conclusory statement that will not support personal jurisdiction."). But more importantly, Plaintiffs' jurisdictional allegation is patently wrong.  *College Source*, 653 F.3d at 1073 ("[W]e may not assume the truth of the allegations in a pleading which are contradicted by affidavit . . . .").

**1.     This Court Lacks General Personal Jurisdiction Over The Principal.**

Far from "significant continuous and pervasive contacts,"[10] The Principal, a mere holding company, has *no* contacts with Nevada.  The Principal is a Delaware corporation with its principal place of business in Des Moines, Iowa, (Declaration of Clint Woods ¶¶ 3-4 ("Woods Decl."); Complaint ¶ 7), and is not qualified, licensed, registered, or authorized to do business in Nevada. The Principal has never conducted any kind of business in Nevada; has never been a resident of Nevada; never maintained headquarters or offices in Nevada; never owned, leased, rented, or controlled any real or personal property in Nevada; never employed agents in Nevada; never

---

[8] Complaint ¶ 7.
[9] Complaint ¶ 12.
[10] Complaint ¶ 12.

586586.1

maintained any bank accounts in Nevada; and never paid state taxes in Nevada. (Woods Decl. ¶¶7-8); *See Pfister*, 931 F. Supp. 2d at 1116 (considering similar factors when assessing personal jurisdiction); *CollegeSource*, 653 F.3d at 1074; *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1225-26 (9th Cir. 2011); *Hall v. Club Corp. of Am.*, 33 Fed. Appx. 873, 875 (9th Cir. 2002) ("Plaza Club's lack of a regular place of business in Nevada is significant in determining whether personal jurisdiction exists."); *Del Giorno*, 2012 WL 4753388, at *2 (refusing to find general personal jurisdiction over a defendant when there was "no indication that the [defendant] ha[d] any continuous, systematic, regulatory, or market presence in Nevada").

In short, The Principal is "in no sense at home" in Nevada. *Goodyear*, ___ U.S. ___, 131 S. Ct. at 2857. Because The Principal's "attenuated connections" to Nevada "fall far short of 'the continuous and systematic general business contacts' necessary to empower" Nevada "to entertain suit against [it] on claims unrelated to anything that connects [it] to the State," this Court cannot assert general personal jurisdiction over The Principal. *Id.*

## 2. This Court Lacks Specific Personal Jurisdiction Over The Principal.

Nor can this Court exercise specific personal jurisdiction over The Principal. *See Schwarzenegger*, 374 F.3d at 802. Plaintiffs do not identify any purposeful contacts by The Principal directed at Nevada giving rise to their claims. The Complaint's allegations center on the contractual relationship between Plaintiffs and Defendants Delaware Charter and David Lerner Associates, Inc. ("Lerner Associates"). Plaintiffs attempt to gloss over the lack of relationship between The Principal and their claims by alleging "Principal is specifically named as the 'Trustee' of these trusts by the Trust Agreement."[11] But this contention is directly belied by the Trust Agreement, which expressly defines the Trustee as "Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company."[12]

Plaintiffs have alleged no contract with The Principal, no direct relationship with The Principal, and no contact with The Principal. In fact, Plaintiffs' only allegation specifically directed at The Principal is the paragraph identifying it as "a Delaware corporation with its principal place of

---

[11] Complaint ¶ 19.
[12] Trust Agreement § 2.24.

586586.1

business in Des Moines, Iowa.  PFC [sic] is a citizen of Iowa."[13]  This is far from the purposeful availment requirement the defendant "has deliberately engaged in significant activities within a State or has created continuing obligations between himself and the residents of the forum."  *Repwest*, 890 F. Supp. 2d at 1188 (internal quotation marks omitted).  Plaintiffs cannot allege The Principal directed *any* contact at Nevada, much less a contact substantial and purposeful enough for specific personal jurisdiction.  *Hanson*, 357 U.S. at 253 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").[14]

### C.    Plaintiffs Cannot Establish Personal Jurisdiction over The Principal based on Actions by Delaware Charter.

Rather than allege any jurisdictional contacts between The Principal and Nevada or Plaintiffs' claims, Plaintiffs lump The Principal and Delaware Charter together as "Principal" in an attempt to conflate the parties and manufacture jurisdiction where none exists.  The United States Supreme Court has expressly rejected such attempts, labeling them "plainly unconstitutional."  *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980).  The Principal and Delaware Charter are distinct legal entities, and "jurisdiction over each defendant must be established individually."  *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

The Principal's *only* connection to this civil action is that it is the ultimate parent company of Delaware Charter. (Woods Decl. ¶5); *See In re Western States Wholesale Natural Gas Litig.*, 605 F. Supp. 2d 1118, 1132 (D. Nev. 2009) ("*In re Western States*") (finding no personal jurisdiction where there was "[n]o evidence in the record" that the parent company defendant "itself had any contacts

---

[13] Complaint ¶ 7.

[14] Because Plaintiffs did not – and cannot – carry their burden of establishing the first two prongs of specific personal jurisdiction, it is unnecessary for this Court to reach the third prong, whether it is reasonable to exercise personal jurisdiction over The Principal.  *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993).  But even if Plaintiffs could satisfy their burden, the exercise of specific personal jurisdiction over The Principal based on non-existent contacts with Nevada would be unreasonable.  *See id.*  The Principal has no contacts with Nevada and has not interjected itself into Nevada's affairs.  *See id.*  Moreover, The Principal is a Delaware corporation headquartered in Iowa; requiring The Principal to litigate in Nevada would be burdensome and inefficient.  *See id.*

586586.1

with [the forum] other than acting as a guarantor on a single contract between [the subsidiary] and a Wisconsin entity").  As an initial matter, Plaintiffs have failed to allege sufficiently that this Court has personal jurisdiction over Delaware Charter, and Delaware Charter has moved to dismiss the Complaint on those grounds.  (*See* Delaware Charter's motion to dismiss).  But even if personal jurisdiction were proper over Delaware Charter, this Court would still lack personal jurisdiction over The Principal.  As the Ninth Circuit has explained, "[t]he existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe*, 248 F.3d at 925; *Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*, No. 12-55338, 2013 WL 6068586, at *1 (9th Cir. Nov. 19, 2013) (unpublished) ("Corporations are treated as separate and distinct entities and 'the presence of one . . . in a forum state may not be attributed to the other' for determining jurisdiction." (quoting *Holland Am. Line Inc v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007))).

The Principal, a holding company, maintains the corporate form and does not direct or control the daily operations of Delaware Charter.  (Woods Decl. ¶ 10); *see Doe*, 248 F.3d at 928. When, as here, "the parent is merely a holding company, the subsidiary's forum-related contacts are not done as the parent's agent because the holding company 'could simply hold another type of subsidiary' as an investment and thus the subsidiary conducts business not as the parent's agent but as its investment." *In re Western States*, 605 F. Supp. 2d at 1135 (quoting *Doe*, 248 F.3d at 929); *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1112 (D. Ariz. 2010); *see also Doe*, 248 F.3d at 929.

Plaintiffs do not allege The Principal controls Delaware Charter's internal affairs or daily operations.  Plaintiffs do not allege either an alter ego theory or agency theory of personal jurisdiction over The Principal.  In the complete absence of personal jurisdiction over The Principal, Plaintiffs' claims against The Principal must be dismissed.

## II.   Plaintiffs Lack Article III Standing to Assert Claims Against The Principal.

Even if this Court could exercise personal jurisdiction over The Principal, the Complaint must still be dismissed because Plaintiffs lack Article III standing as to The Principal.  The only "specific allegations" against The Principal are:

586586.1

7.  Defendant Principal Financial Group, Inc. ("PFC") [sic] is a Delaware corporation with its principal place of business in Des Moines, Iowa.  PFC is a citizen of Iowa.

10.  At all relevant times, [Delaware Charter] is and was a wholly-owned subsidiary of PFC [sic], and collectively both shall be referred to as "Principal."[15]

From that point forward, the Complaint lumps The Principal and Delaware Charter together as "Principal" and makes no attempt to assert any particular allegations explaining how Plaintiffs were injured by *each* Defendant.

Plaintiffs do not allege they have suffered financial losses, adverse tax consequences or otherwise incurred actual injuries as a result of "Principal's" alleged failure to provide them with an independent accounting.   Plaintiffs also do not claim that "but for" the alleged agreement to conduct an independent accounting they would not have invested in the Apple REITS or, conversely, made an alternative investment.  Likewise, Plaintiffs' Complaint gives no indication how their undisclosed injury, supposedly caused by the lack of an independent accounting, will somehow be redressed by a favorable decision in this action.  For these reasons, Plaintiffs do not have Article III standing to pursue their claims against The Principal.

A.     **Article III Standing is a Threshold Issue Determined on the Facts as They Exist when the Complaint Is Filed.**

The United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  One of the "landmarks, setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III . . . is the doctrine of standing."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (*"Lujan"*) (citations omitted).  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Id.*   Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (*"Warth"*); *accord Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 923 (9th Cir. 2007).

---

[15] Complaint ¶¶ 7, 10.

586586.1

Standing is determined by the facts that exist at the commencement of the litigation. *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1171 (9th Cir. 2002). It is insufficient for a plaintiff to attempt to satisfy the Article III standing requirements as the case progresses. Instead, the requirements of standing must be satisfied from the outset. *Lujan*, 504 U.S. at 569 n.4 (stating that "'[t]he existence of federal jurisdiction ordinarily depends on the facts as *they exist when the complaint is filed*'" and rejecting the argument that events which occurred after filing "retroactively created a redressability (and hence jurisdiction) that did not exist at the outset" (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989)) (emphasis in *Lujan*)).

### B.   Plaintiffs Bear the Burden of Establishing Article III Standing.

The United States Supreme Court has made clear – "[t]he party invoking federal jurisdiction bears the burden of establishing these elements" of standing. *Lujan,* 504 U.S. at 561; *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998) ("The party invoking federal jurisdiction [where standing to sue is called into question] bears the burden of establishing its existence"). That Plaintiffs brought this case as a purported nationwide class action does not relieve them of the obligation of establishing that they, personally, have Article III standing. The United States Supreme Court has also noted on several occasions the named class representative must have standing to proceed with a class action.[16] *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured . . . .") (quotation marks and citations omitted)); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("*O'Shea*") ("[I]f none

---

[16] The Ninth Circuit and district courts in this Circuit have rigorously complied with this Supreme Court holding: "Lastly, the fact that Plaintiffs filed their complaint as a class action is of no moment. Standing 'is a jurisdictional element that must be satisfied prior to class certification.'" *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997); *see also Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification."); *Shin v. Esurance Ins. Co.*, No. C8-5626 RBL, 2009 WL 688586, at *4 (W.D. Wash. Mar. 13, 2009) ("in a class action, constitutional standing requirements must be satisfied before proceeding to the merits" (internal quotation marks omitted)); *Siemers v. Wells Fargo & Co.*, No. C 05-04518, 2006 WL 3041090, at *6 (N.D. Cal. Oct. 24, 2006) ("Standing 'is a jurisdictional element that must be satisfied prior to class certification.'"); *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004) ("*Henry*") ("a plaintiff who lacks Article III standing to sue a defendant may not establish standing 'through the back door of a class action'").

586586.1

of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

### C.   There Are Three Required Elements of Article III Standing.

The United States Supreme Court requires a plaintiff satisfy three elements to establish Article III standing:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560-61 (citations omitted); *accord Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  Given these three requirements for Article III standing, every plaintiff must make a plausible showing he personally suffered some actual or threatened injury as a proximate result of some improper conduct of each specific defendant. *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979) ("The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant."); *see also Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 261 (1977) ("the complaint must indicate that the [plaintiff's] injury is indeed fairly traceable to the defendant's acts or omissions."); *Easter*, 381 F.3d at 961–62 (same).

In the class action context, a plaintiff must meet every element of Article III standing as to each defendant.  Class plaintiffs are not subject to more lenient standing rules, and a class representative cannot base standing to sue on the claims of unnamed class members.  *See Lewis*, 518 U.S. at 357; 1 Newberg on Class Actions § 2:5 (5th ed.) ("In multi-defendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them").  As Chief Judge Pro articulated in finding plaintiff's class action claims against his employer did not automatically create standing over the employer's subsidiaries and affiliates, "[t]o establish Article III standing in a

class action, at least one named plaintiff must have standing in his own right to assert a claim against *each named defendant* before he may purport to represent a class claim against that defendant." *Henry*, 223 F.R.D. at 544 (emphasis added); *see also Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011) (affirming dismissal of claims against certain trusts and defendants connected to those trusts for lack of standing, noting that "[e]ach trust is backed by loans from a different mix of banks; no named plaintiff has a significant interest in establishing wrongdoing by the particular group of banks that financed a trust from which the named plaintiffs made no purchases"); *Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 245-48 (5th Cir. 2008) (holding that named plaintiff in purported class action lacked Article III standing to bring claims against certain defendants, with which he had not dealt, because those defendants "have caused [the named plaintiff] no cognizable injury" even though plaintiff had Article III standing as to a separate defendant); *Lucas v. BMS Enter., Inc.*, No. 3:09-CV-2159-D, 2010 WL 2671305, at *2 (N.D. Tex. Jul. 1, 2010) ("[N]amed plaintiffs in a class action suit must meet every element of standing as to each defendant, including alleging that they were injured by each defendant named in the suit.").[17] Accordingly, for Article III purposes, it makes no difference whether Plaintiffs have established standing to sue Lerner Associates. Instead, Plaintiffs must also separately establish each element of Article III standing against both The Principal and Delaware Charter, separate corporate entities impermissibly lumped together in the Complaint as "Principal."

---

[17] *See also Newport v. Dell, Inc.*, No. CV-08-96, 2008 WL 4347017, at *2-3 (D. Ariz. Aug. 21, 2008) (plaintiff's standing to sue one defendant did not establish standing to sue co-defendants with which she had no contractual relationship); *Cady v. Anthem Blue Cross Life & Health Ins. Co.*, 583 F. Supp. 2d 1102, 1105-06 (N.D. Cal. 2008) (plaintiff's standing to assert class action claims against his insurer arising from denial of benefits did not confer standing on plaintiff to assert claims against other insurers who did not have "anything to do" with the claims decision); *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169-171 (D. Mass. 2004) (reaffirming denial of standing to bring a class action suit against a mutual fund company in which the plaintiffs owned no shares but were under the control of the same corporate entity that controlled funds in which the plaintiffs did have an investment); *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 995-96 (D. Md. 2002); *Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 73-74 (S.D.N.Y. 1986); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 690, 697-98 (E.D. Pa. 1973).

586586.1

1      ## 1.   Plaintiffs Have Not Incurred a Distinct, Palpable Injury.

2          The United States Supreme Court noted a "particularized" injury is one "affect[ing] the

3      plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1; *Warth*, 422 U.S. at 501

4      ("The plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared

5      by a large class of other possible litigants").  For, "[u]nless [plaintiffs] can thus demonstrate the

6      requisite case or controversy between themselves personally and [defendants], 'none may seek relief

7      on behalf of himself or any other member of the class.'"  *Warth*, 422 U.S. at 502 (citation omitted).

8      The injury prong of this standing analysis requires showing the distinct and palpable injury or actual

9      or threatened injury is a personal injury-in-fact; the injury cannot be abstract, hypothetical or

10     conjectural.  *O'Shea*, 414 U.S. at 494; *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

11     Consequently, the Complaint must specifically "trace" the alleged injury-in-fact to each defendant's

12     conduct.  *See Easter*, 381 F.3d at 962 (holding that borrowers of second mortgage loans had no

13     standing to sue those investment trusts that did not hold a named plaintiff's note because plaintiffs

14     could not trace the alleged injury-in-fact to those defendants' actions).[18]

15         Plaintiffs fail to meet the first prong of Article III standing because the Complaint fails to

16     sufficiently allege they have been injured. Plaintiffs fail to specifically plead any "palpable" injury

17     whatsoever traceable to The Principal, and instead lump Delaware Charter and The Principal

18     together as "Principal."  Plaintiffs' Complaint is also void of any description of the injury-in-fact

19     actually suffered by them, such as investment loss, unintended taxes, fines, penalties or other

20     economic damages.  The generalized allegations against "Principal" present, at most, the abstract,

21

---

22     [18] *See also* 1 J. McLaughlin, <u>Class Actions</u> § 4:28, at 659–60 (6th ed. 2010) ("In a multi-defendant
       case, a putative class representative must allege that he or she has been injured by the conduct of
23     each defendant to establish standing."); *Daughtery v. I-Flow, Inc.*, No. 3:09-CV-2120-P, 2010 WL
       2034835, at *3 (N.D. Tex. Apr. 29, 2010) (class representative "must allege facts sufficient to
24     establish that he suffered an injury that was caused by a particular defendant(s)' conduct."); *Johnson
       v. GEICO Cas. Co.*, 673 F. Supp. 2d 244, 254 (D. Del. 2009) (holding even with respect to affiliated
25     defendants in a class action, standing must be shown for each defendant; ordering dismissal where
       two defendants were not alleged to have insured any of the named plaintiffs); *Cattie v. Wal-Mart
26     Stores, Inc.*, 504 F. Supp. 2d 939, 944–46 (S.D. Cal. 2007) (plaintiffs lacked standing against one
       Wal-Mart entity where they relied solely on allegations it acted jointly with other Wal-Mart
27     entities); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (finding even in a
       putative class action, each named plaintiff must personally allege a cognizable and traceable injury).

28

hypothetical or conjectural "injuries" insufficient to establish standing.  Without actual or threatened injury, Plaintiffs have not alleged the injury in fact element for Article III standing against The Principal.

### 2.   Plaintiffs Have Failed To Establish a Causal Connection Between their "Injury" and the Failure To Conduct an Independent Accounting.

Plaintiffs also fail to satisfy the second requirement for Article III standing, a causal connection between their injury and the conduct complained of.  To satisfy this requirement, Plaintiffs must trace the alleged injury to each defendant's challenged conduct, rather than to that of some other actor not before the court.  *Lujan,* 504 U.S. at 560.  To the extent Plaintiffs could demonstrate an actual "injury" suffered because of the lack of an independent accounting, there is no allegation in the Complaint that Plaintiffs would have done anything differently "but for" such alleged failure, such as not opening an IRA account, not investing in the Apple REITs, or making some other alternative investment.  Likewise, as the IRAs were self-directed and Plaintiffs had full authority over the corresponding investments, Plaintiffs cannot draw any connection between The Principal and the performance of any such investments.  Accordingly, Plaintiffs have not alleged the threshold causal connection required for standing purposes.

### 3.   Plaintiffs Have Not Established Redressability.

In addition to establishing an actual injury and causal connection, Plaintiffs must show it is "likely," as opposed to merely "speculative," that such injury will be "redressed by a favorable decision."  Plaintiffs' Complaint fails to allege this essential element for Article III standing.  Plaintiffs do not allege suffering any economic losses as a result of not receiving an independent accounting of the Apple REITs.  Consequently, Plaintiffs give no corresponding explanation how their supposed injury will be redressed if the Court orders The Principal – a holding company with no contractual relationship with the Plaintiffs – to conduct an independent accounting.  In other words, Plaintiffs give no indication how they will be in any more favorable position should such an accounting be done.  Because the Complaint alleges no injury in fact, causal connection, or likelihood of redressability as to Plaintiffs' claims against The Principal, Plaintiffs lack Article III standing as to The Principal, and this Court lacks subject matter jurisdiction over Plaintiffs' claims

against The Principal. *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit").

## III.    Venue Is Improper in this District.

The plaintiff has the burden of showing venue is proper. *Pfister*, 931 F. Supp. 2d at 1119. Venue in civil actions brought in federal district courts is governed by 28 U.S.C. § 1391.  Section 1391(b) provides a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"When there are multiple parties and/or multiple claims in an action, the plaintiff must establish venue is proper as to each defendant and as to each claim."  *Kelly v. Echols*, No. CIV-05-118, 2005 WL 2105309, at *11 (E.D. Cal. Aug. 30, 2005); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3807 (3d ed. updated 2013) ("[I]t is common for courts to say that venue must be proper as to each claim and as to each party.").

As set forth in Plaintiffs' Complaint, none of the defendants are "residents" of Nevada[19] so the first venue category is inapplicable.  As to the second venue category, Plaintiffs fail to assert *any* specific factual allegations giving rise to their particular claims against The Principal, much less a description of events involving The Principal, which occurred in Nevada.  As previously noted in Section I, this Court lacks personal jurisdiction over The Principal so the third venue category is

---

[19] *See* Complaint ¶¶ 7-9.

586586.1

1  inapplicable.  Accordingly, Plaintiffs have not met their burden of showing venue is proper in this

2  district as to The Principal.

3                                    **CONCLUSION**

4        This Court lacks personal jurisdiction over The Principal.  Plaintiffs also lack Article III

5  standing to assert claims against The Principal.  Venue is also not proper in this district as to The

6  Principal.  For these reasons and the reasons set forth above, The Principal respectfully requests that

7  this Court grant The Principal's Motion to Dismiss Plaintiffs' Complaint.

8        DATED this 31st day of December, 2013

9

10                              **WILSON, ELSER, MOSKOWITZ, EDELMAN
                                   & DICKER LLP**

11

12  BY: /s/Sheri M. Thome
                                   Sheri M. Thome, Esq.
13                                 Nevada Bar No. 008657
                                   Chad C. Butterfield, Esq.
14                                 Nevada Bar No. 010532
                                   300 S. Fourth Street, 11th Floor
15                                 Las Vegas, Nevada 89101
                                   (702) 727-1400; FAX (702) 727-1401
16                                 sheri.thome@wilsonelser.com
                                   chad.butterfield@wilsonelser.com
17                                 *Attorneys for Defendant Principal Financial
                                   Group, Inc.*

18

19

20

21

22

23

24

25

26

27

28

586586.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, and that on this 31st day of December, 2013, I electronically filed and served a true and correct copy of the foregoing **DEFENDANT PRINCIPAL FINANCIAL GROUP INC.'S CORRECTED MOTION TO DISMISS** to all parties identified on file with the CM/ECF.

T. James Truman
T. JAMES TRUMAN & ASSOCIATES
3654 N. Rancho Drive
Las Vegas, NV 89130
district@trumanlegal.com

L. Timothy Fisher
Annick M. Persinger
BURSOR & FISHER, PA
1990 N. California Blvd., Ste 940
Walnut Creek, CA 94596
ltfisher@bursor.com
apersinger@bursor.com
*Attorneys for Plaintiffs*

Donald J. Campbell
J. Colby Williams
CAMPBELL & WILLIAMS
700 S 7th Street
Las Vegas, NV 89101
djc@cwlawlv.com
jcw@cwlaw.com

Michael D. Blanchard
BINGHAM McCUTHCHEN LLP
1 State Street
Hartford, CT 06103
michael.blanchard@bingham.com

Derek M. Care
Kenneth I. Schacter
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, NY 10022
derek.care@bingham.com
kenneth.schacter@bingham.com
*Attorneys for Defendant David Lerner Associates, Inc.*

By /s/Annemarie Gourley
An Employee of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

586586.1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

KEVIN and SUSAN LEWIS, on behalf of )
themselves and all other similarly situated, )        Case No: 2:13-CV-01809-GMN-(GWF)
                                             )
                Plaintiffs,                  )
                                             )
        vs.                                  )
                                             )
DELAWARE CHARTER GUARANTEE                   )
& TRUST COMPANY D/B/A                         )
PRINCIPAL TRUST COMPANY,                     )
PRINCIPAL FINANCIAL GROUP, INC.,             )
and DAVID LERNER ASSOCIATES,                 )
INC.,                                        )
                                             )
                Defendants.                  )
                                             )

## DECLARATION OF CLINT WOODS IN SUPPORT OF DEFENDANT PRINCIPAL FINANCIAL GROUP, INC.'S MOTION TO DISMISS

1.  My name is Clint Woods, and I am the Assistant Corporate Secretary of Principal Financial Group, Inc. ("The Principal"). I have worked at one or more companies that are currently subsidiaries of The Principal from 1988 to 2003 and again since 2012. The statements set forth in this Declaration are based upon my personal knowledge and information and records of the regularly conducted business activities of The Principal. I am over 21 years of age and competent to testify to the statements set forth in this Declaration.

2.  I have reviewed the complaint in this action and have familiarized myself with the allegations.

3.  The Principal is incorporated under Delaware law. The Principal maintains its corporate headquarters and principal place of business in Des Moines, Iowa.

0273-8675 6

4. The Principal is a holding company.

5. The Principal is the parent company of Defendant Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company ("Delaware Charter").

6. Some of The Principal's subsidiaries offer retirement savings investment and insurance products and services to the public.

7. The Principal is not qualified, licensed, registered, or authorized to do business in Nevada. The Principal has never conducted any kind of business in Nevada.

8. The Principal has never been a resident of Nevada. The Principal has never maintained headquarters or offices in Nevada and has never owned, leased, rented, or controlled any real or personal property in Nevada. The Principal has never employed agents in Nevada. The Principal has never maintained bank accounts in Nevada and has never paid Nevada state taxes.

9. Delaware Charter is a subsidiary of The Principal. Delaware Charter is a non-depository trust company that provides trust and administrative services for employee benefit plans and individual tax-advantaged accounts.

10. The Principal does not direct or control the daily operations of Delaware Charter. The Principal maintains corporate formalities with Delaware Charter.

11. Delaware Charter does not serve as The Principal's general agent in Nevada.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of December, 2013, in Des Moines, Iowa.

Clint Woods

02738675.6

2